UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FNU LNU a/k/a "Tony McKinnon" a/k/a "Saeed" a/k/a "Reginald Davis,"

        Petitioner,

-v-

UNITED STATES OF AMERICA,

        Respondent.

No. 12-cv-7897 (RJS)

UNITED STATES OF AMERICA,

-v-

FNU LNU a/k/a "Tony McKinnon" a/k/a "Saeed" a/k/a "Reginald Davis,"

        Defendant.

No. 09-cr-543 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Petitioner brings this petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"), requesting that the Court vacate his convictions and sentences for aggravated identity theft and making false statements. Specifically, Petitioner challenges these convictions and sentences on the ground that he received ineffective assistance of counsel prior to attending a proffer session with the government to determine whether he was eligible for the safety valve provisions of 18 U.S.C. § 3553(f) ("§ 3553(f)") and the U.S. Sentencing Guidelines ("U.S.S.G") §§ 2D1.1(b)(17) and 5C1.2(a). For the reasons set forth below, the Petition is denied.

I.  BACKGROUND[1]

On April 30, 2009, law enforcement officers, including Immigration and Customs Enforcement ("ICE") agents, arrested Petitioner at his home for his participation in a conspiracy to distribute heroin.  (Trial Tr. at 193:2–11.)  During a post-arrest interview on the same day, Petitioner identified himself to ICE agents as Reginald Lynn Davis (*id.* at 193:9–11), a name that the government argues – and the Second Circuit has affirmed based on "overwhelming" evidence – does not belong to Petitioner, *see United States v. Adekanbi*, 675 F.3d 178, 185 (2d Cir. 2012).  After receiving consent for a search that same day, the officers also searched Petitioner's apartment and found a New York State identification card with the name "Reginal L. Davis" and birth date of October 8, 1984, a Citibank banking card with the name "Reginal Davis," and an identification bracelet with the name "Reginal Davis."  (Trial Tr. at 146:25–150:10.)  On May 28, 2009, a grand jury in the Southern District of New York returned an indictment, charging Petitioner and four co-defendants for their participation in a conspiracy to distribute and possess with the intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846 ("Count One").  (Doc. No. 17 ("Original Indictment").)  The charge carried a mandatory minimum sentence of ten years' imprisonment and a maximum sentence of life imprisonment.

On July 14, 2009, Petitioner retained attorney John Russo to represent him.  (Doc. No. 21.) Thereafter, and throughout his representation, Petitioner consistently maintained that his name was

---

[1] Unless otherwise indicated, citations to docketed items refer to those materials that appear in Petitioner's criminal case, *United States v. FNU LNU*, No. 09-cr-543 (RJS).  However, the Court also cites to materials that appear in Petitioner's civil case, *FNU LNU v. United States*, No. 12-cv-7897 (RJS), including the Petition (No. 12-cv-7897 (RJS), Doc. No. 1 at 8–28 ("Pet.")), the government's opposition (Doc. No. 180 ("Opp'n")), Petitioner's reply (Doc. No. 182 ("Reply")), and all exhibits and declarations attached therein.  The Court also relies on the transcripts from the following proceedings in the criminal case:  the January 4, 2010 pretrial conference ("Jan. 4 PTC Tr."), the May 19, 2010 pretrial conference ("May 19 PTC Tr."), the June 1, 2010 final pretrial conference ("June 1 PTC Tr."), the June 7–15, 2010 trial of Petitioner ("Trial Tr."), and the September 24, 2010 sentencing of Petitioner ("Sent. Tr.").

2

Reginald Lynn Davis.  (Declaration of Petitioner, dated Aug. 20, 2012, No. 12-cv-7897 (RJS), Doc. No. 1 at 3–4 ("Petitioner Decl."), ¶¶ 2–3.)

On December 10, 2009, Russo emailed the government to inquire as to whether Petitioner was eligible for a reduced sentence pursuant to the § 3553(f) safety valve provision.[2]  (Declaration of Ann-Elizabeth Ostrager, dated Oct. 23, 2012, No. 12-cv-7897 (RJS), Doc. No. 1 at 5–7 ("Ostrager Decl."), Ex. A at 1.)  On the same day, the government attorney responded that "any discussion of a plea agreement only begins with [Petitioner] coming clean with his true identification.  Without that, we cannot agree to a safety valve because it will be our position that he is not being truthful."  (*Id.*)  On December 21, 2009, Petitioner and his counsel attended a proffer session with the government to determine whether Petitioner was safety-valve eligible; however, during the proffer, Petitioner continued to assert that his name was Reginald Lynn Davis, that his birth date was October 8, 1984, and that his social security number was ▓▓▓▓▓▓▓▓.  (Trial Tr. at 479:14–480:12, 482:4–19.)  Petitioner also maintained that he was responsible for less than one kilogram of heroin, which, if believed, would result in a mandatory minimum sentence of five years' imprisonment, and a maximum sentence of 40 years' imprisonment pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  (Jan. 4 PTC Tr. at 4:7–21 (Russo noting that Petitioner continues to dispute that the heroin conspiracy involved more than a kilogram of heroin and, therefore, Petitioner would not accept a plea agreement under 21 U.S.C. § 841(b)(1)(A)); Sent. Tr. at 28:24–29:3 (government asserting that Petitioner "was not truthful in his safety valve proffer" because "it is clear he engaged in more than 10 transactions over the course of 30 days").)

---

[2] Section 3553(f) provides that the Court may impose a sentence below a statutory mandatory minimum sentence if, among other things, "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  18 U.S.C. § 3553(f).

3

On March 4, 2010, a grand jury returned a subsequent indictment, charging Petitioner with four additional counts. Specifically, Count Three charged Defendant with making false statements about his identity in his post-arrest statements to law enforcement officers on April 30, 2009 in violation of 18 U.S.C. § 1001 ("Count Three"); Count Four charged Defendant with making false statements about his identity during his proffer session with the government on December 21, 2009 in violation of 18 U.S.C. § 1001 ("Count Four"); Count Five charged Defendant with aggravated identify theft in connection with his post-arrest statements to law enforcement officers on April 30, 2009 in violation of 18 U.S.C. § 1028A(a)(1) and (c)(4) ("Count Five"); and Count Six charged Defendant with aggravated identity theft in connection with his statements to the government during his proffer session on December 21, 2009 in violation of 18 U.S.C. § 1028A(a)(1) and (c)(4) ("Count Six"). (Doc. No. 122 ("S3 Superseding Indictment").)[3]

After retaining new counsel, Petitioner filed a motion on March 29, 2010 to suppress statements made during the proffer session, claiming that Russo rendered ineffective assistance of counsel when he arranged for Petitioner to attend the proffer session even though the government had warned Russo that it would oppose the safety-valve if he maintained that his name was Reginald Lynn Davis. (Doc. No. 63.) During a pretrial conference on May 19, 2010, the Court denied Petitioner's motion to suppress, noting that, "in the absence of a declaration or affidavit from [Petitioner]," the Court was "not in a position to determine whether or not Mr. Russo acted objectively unreasonably. . . . [T]hat analysis turns on precisely what information was conveyed to [Petitioner] by Mr. Russo." (May 19 PTC Tr. at 50:18–24.)

---

[3] Count Two of the S3 Superseding Indictment charged Petitioner's co-defendant with maintaining a "stash house" in violation of 21 U.S.C. § 856(a)(2) ("Count Two").

On May 26, 2010, Defendant filed a motion to sever Counts Three, Four, Five, and Six of the S3 Superseding Indictment – the false statements and identity theft charges – from Counts One and Two – the heroin charges – on the ground that there was no connection between the false statements and identity theft charges and the heroin charges. (Doc. Nos. 84, 89.) During a pretrial conference on June 1, 2010, the Court denied the motion to sever, finding that the false statements and identity theft charges and the heroin charges were properly linked under Rule 8 of the Federal Rules of Criminal Procedure. (June 1 PTC Tr. at 12:15–21.)

On June 7, 2010, trial commenced on Counts One, Two, Four, and Six of the S3 Superseding Indictment against Petitioner and one other defendant.[4] As relevant here, the government introduced evidence during the trial indicating that Defendant had identified himself as Reginald Lynn Davis to federal agents following his arrest on April 30, 2009. (*See, e.g.*, Trial Tr. at 193:2–11 (Testimony of ICE Special Agent Richard Johnson); *id.* at 146:25–150:10 (Testimony of ICE Special Agent Brian Herbert, indicating that, during a search of Petitioner's apartment on April 30, 2009, he found a New York State identification card with the name "Reginal L. Davis" and birth date of October 8, 1984, a Citibank banking card with the name "Reginal Davis," and an identification bracelet with the name "Reginal Davis").) The government also introduced evidence demonstrating that Petitioner had identified himself as Reginald Lynn Davis to the government during Petitioner's proffer session on December 21, 2009. (*See, e.g.*, *id.* at 482:4–25 (Testimony of ICE Special Agent Carl DeFilippo, indicating that Petitioner stated that he was Reginald Davis, that he was born on October 8, 1984, that his social security number was ██████████, and that he had been issued a social security card with this number to his address in

---

[4] On June 8, 2010, prior to each party's opening statements, the government stated, without explanation, that it was not going to pursue Counts Three and Five. (Trial Tr. at 71:4–72:18.) Subsequently, upon the government's motion at sentencing, the Court dismissed Counts Three and Five with prejudice. (Sent. Tr. at 64:22–65:3.)

Brooklyn, New York).)  The government then called Reginald Lynn Davis, Jr. – not Petitioner – who testified that his name is in fact Reginald Davis, that his birth date is July 20, 1984, that his social security number is ███████, that he resides in Houston, Texas, that he had never lived outside of Texas or travelled to New York, and that he had never met Defendant or given him permission to use his name or social security number.  (*Id.* at 650:2–651:13, 659:20–665:22; 667:1–668:25.)   The government also introduced Davis's birth certificate, social security card, and passport application, among other items, as evidence to support Mr. Davis's testimony.  (*Id.*)  In summations, the government repeated the evidence presented at trial to demonstrate that Petitioner was not Reginald Lynn Davis and asked the jury to consider whether, after having had the opportunity to observe Petitioner throughout trial, it "fit with [their] common sense" that Petitioner, who appeared to be well over 40 years old, was in fact only 25 years old as his stated date of birth and social security number suggested.  (*Id.* at 902:9–13.)  The government maintained that it was "not a close question."  (*Id.* at 985:12.)

On June 15, 2010, the jury returned a guilty verdict against Petitioner on Counts One, Four, and Six.  (*Id.* at 1089:4–22, 1090:5–21.)  On September 24, 2010, after finding that Petitioner was not eligible for the safety valve provisions of § 3553(e) or U.S.S.G. 2D1.1(b)(17) and 5C1.2, and that Defendant deserved a two-level enhancement for obstruction of justice pursuant to U.S.S.G. 3C1.1, the Court sentenced Petitioner to 110 months' imprisonment.  (*See* Sent. Tr. at 22:21–23; 29:9–14 ("[I]dentity is part of the information that is required to be provided concerning the [narcotics conspiracy] offense, [and] a failure to provide that information, in addition to the obstruction, is enough to preclude the safety valve from applying."); *id.* at 61:12–22.)  Specifically, the Court imposed a sentence of 86 months' imprisonment on Count One, 60 months' imprisonment on Count Four to run concurrently with the sentence on Count One, and 24 months'

6

imprisonment on Count Six to run consecutively with the sentences on Counts One and Four. (*Id.*) The sentence on Count One was based, in part, on the fact that the jury and the Court found that Defendant's narcotics conspiracy involved 100 grams or more but less than one kilogram of heroin, a violation of 21 U.S.C. § 841(b)(1)(B). (Sent. Tr. at 7:5–9; Trial Tr. at 1089:17–22.)

On September 29, 2010, Petitioner filed a timely notice of appeal, arguing that (i) there was insufficient evidence from which the jury could convict Petitioner on Counts Four and Six, (ii) the Court improperly denied Petitioner's motion to suppress statements made during the safety-valve proffer, (iii) the Court improperly denied Petitioner's motion for severance of Count One from Counts Four and Six, and (iv) Petitioner's sentence was procedurally and substantively unreasonable. (Doc. No. 126.); *Adekanbi*, 675 F.3d at 182. On March 29, 2012, the Second Circuit affirmed Petitioner's conviction and sentence in all respects. *See Adekanbi*, 675 F.3d at 187. In relation to Petitioner's argument that the Court improperly denied his motion to suppress statements from the proffer session, the Second Circuit found that "[h]aving been informed of the government's precondition for recommending safety-vale relief" – that Petitioner must reveal his true identity – Petitioner nonetheless voluntarily attended the safety-valve proffer session and "lied about his identity during the proffer." *Id.* at 184.

Petitioner subsequently filed the instant Petition, arguing that the Court should vacate his convictions and sentences for Counts Four and Six because Russo provided Petitioner with constitutionally ineffective assistance of counsel when Russo advised Petitioner to participate in the safety-valve proffer session. In the alternative, Petitioner requests that the Court conduct an evidentiary hearing to assess whether Russo's conduct fell below an objective standard of reasonableness and prejudiced Petitioner.

## II. LEGAL STANDARD

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted). A claim of ineffective assistance of counsel, however, is one permissible basis for bringing a § 2255 petition.

The Sixth Amendment to the U.S. Constitution guarantees a criminal defendant's right to the assistance of counsel. *See* U.S. Const. amend. VI. When challenging the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong. *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

With respect to *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not

8

use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). The court starts from the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91). Because there are many different ways to provide effective assistance in any given case, and "[e]ven the best criminal defense attorneys would not defend a particular client the same way," there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689.

With respect to *Strickland*'s second prong, an "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691). Rather, to find prejudice, a court must conclude that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (quoting *Strickland*, 466 U.S. at 686). In other words, a "reasonable probability" that the outcome would have been different but for counsel's deficient performance is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### III. DISCUSSION

Petitioner argues that Russo's conduct was objectively unreasonable because Russo failed to advise Petitioner about the risk of attending the proffer session and that this conduct prejudiced Petitioner because, had he known about the risks, he would not have attended the proffer session and made incriminating statements. (Petitioner Decl. ¶¶ 5–6.) For the reasons explained below,

the Court finds that Petitioner has failed to meet the high burden of establishing ineffective assistance of counsel, and, therefore, his Petition is denied.

   A.  Petitioner Has Failed to Demonstrate that Russo's Conduct Was Objectively Unreasonable

Petitioner contends that Russo's conduct was objectively unreasonable because Russo (i) failed to tell Petitioner that the government would oppose safety-valve relief if he continued to maintain that his name was Reginald Davis, and (ii) failed to offer informed advice concerning Petitioner's decision to attend the proffer session. Despite these arguments, the record demonstrates that Russo's conduct was objectively reasonable.

First, Russo's declaration and the record at trial establish that Russo, at the very least, told Petitioner about the government's email. Russo asserts that he informed Petitioner that if he attended the safety-valve proffer and continued to maintain that his name was Reginald Davis, the government would oppose safety-valve relief because it did not believe that he was Reginald Davis. (*See* Declaration of John L. Russo, dated Feb. 21, 2013, Doc. No. 181 ("Russo Decl."), ¶ 6.) While Petitioner claims, through his declaration, that Russo told him no such thing (*see* Petitioner Decl. ¶ 5), a district court confronted with competing declarations on a habeas petition, "need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). Here, the record contradicts Petitioner's declaration and establishes that Russo informed Petitioner about the government's view of his safety-valve eligibility. Indeed, Petitioner's Reply concedes that Russo informed Petitioner about the government's position on his safety-valve eligibility. (*See* Reply at 4 (noting that Russo "pass[ed] on to Petitioner the contents of the e-mail he exchanged with the government . . . in which the government advised that it would oppose safety-valve relief absent Petitioner 'coming clean with his true identification'").) Moreover, by

10

signing the Proffer Agreement, Petitioner further acknowledged that Russo explained the contents of the Proffer Agreement to Petitioner. (Opp'n, Ex. A ("Proffer Agreement") at 1–2.)

In addition, to the extent that factual disputes remain, the Court finds that Russo is the more reliable source, especially since a jury has found – and the Second Circuit has affirmed – that Petitioner repeatedly lied to federal officers about his identity. *See Adekanbi*, 75 F.3d at 185–86 (noting that Petitioner lied about his identity); *see also Melo v. United States*, 825 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) (finding, based on the record at trial, that counsel's affidavit that he advised petitioner is "more worthy of consideration than [petitioner's] self-serving assertions to the contrary," especially in light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (citing *Strickland*, 466 U.S. at 689)). As a result, the Court finds that an evidentiary hearing is not needed to resolve the factual dispute as to whether Russo informed Petitioner about the contents of the government's email. *See Puglisi*, 586 F.3d at 215 (noting that a trial judge, who is "intimately familiar with the proceedings and the surrounding circumstances . . . based on the knowledge gained in the underlying criminal proceeding and on his or her role as a trier of fact in the habeas proceeding," is in a position to hold, without a full evidentiary hearing, "that the particular petitioner had no chance of overcoming counsel's detailed" affidavit); *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (affirming the district court's denial of an evidentiary hearing where the court, which "having tried the case, was intimately familiar with the trial proceedings and the events and circumstances surrounding them," concluded that "a hearing would not offer any reasonable chance of altering its view of the facts" since "the testimony of [petitioner] and his trial counsel would add little or nothing to the written submissions"); *Diallo v. United States*, No. 12-cv-3310 (MAE), 2014 WL 4460364, at *2 (S.D.N.Y. Sept. 10, 2014) (denying petitioner's request for an evidentiary hearing where the court

was "familiar with the present case" and petitioner's "allegations are not supported by objective evidence aside from his own self-serving assertions" (internal quotation marks omitted)).[5]

Nevertheless, Petitioner argues that, even if Russo informed Petitioner about the contents of the government's email, the advice was so deficient that it constituted no advice at all and that, therefore, he was unable to make an informed decision about whether to attend the proffer session. (Pet. at 7.) In particular, Petitioner claims that he should have been advised of (i) the "costs and benefits of signing such an agreement," including that "statements made at this proffer could be used against him at trial" notwithstanding his rights against self-incrimination, and (ii) the fact that "the government could seek to bring additional charges" based on his statements at the proffer session. (Reply at 4–5.) Petitioner further argues that there were several alternative courses of action that Russo could have pursued, such as submitting a written proffer or directing Petitioner not to answer questions about his identity during the proffer session. (Pet. at 8–11.)

However, while counsel is "obliged to inform his client of the consequences of proffering in order to accord with prevailing professional norms," *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005), the fact remains that "[t]here are countless ways to provide effective assistance in any given case," *Strickland*, 466 U.S. at 689. Accordingly, the mere fact that Russo could have pursued alternative courses of action does not mean that his advice regarding the proffer session was deficient. Here, the record demonstrates that Russo advised Petitioner of the factors relevant to whether he should attend the proffer session, namely that (i) if he continued to maintain that his

---

[5] Petitioner's request for an evidentiary hearing is denied for the additional reason that, as the Court finds below, Petitioner has failed to demonstrate that he was prejudiced by Russo's alleged failure to advise him about the safety-valve proffer session. *See Barnes v. Burge*, 372 F. App'x 196, 202 (2d Cir. 2010) ("Because we conclude that Petitioner has failed to demonstrate prejudice resulting from counsel's alleged errors, any evidence regarding why counsel took the actions he did would ultimately be irrelevant."); *Al-Kassar v. United States*, No. 07-cr-354 (JLC) (JSR), 2014 WL 1378772, at *13 (S.D.N.Y. Apr. 8, 2014) ("No hearing is required to resolve whether [petitioner's] trial counsel's performance fell below the standard of reasonableness because [petitioner] cannot establish prejudice, and neither the record nor [petitioner's] own arguments demonstrate that an evidentiary hearing would overcome this deficiency."), *report and recommendation adopted*, 2014 WL 3417643 (S.D.N.Y. July 14, 2014).

name was Reginald Davis, the government would oppose his eligibility for safety-valve relief (*see* Russo Decl. ¶ 6), and (ii) by attending the proffer session, he understood that he was waiving several rights, including his Fifth Amendment right against self-incrimination (*see* Proffer Agreement at 1–2). *See Davis*, 428 F.3d at 89 (finding that counsel's advice was deficient where petitioner *was not informed* that he was waiving his constitutional right against self-incrimination). In addition, while the record does not demonstrate that Russo explicitly advised Petitioner that the government could file additional charges against him, the Proffer Agreement, which Petitioner executed before making statements to the government, expressly stated that Petitioner discussed with Russo and understood the terms of the Proffer Agreement, including that the government may use the statements he made during the proffer session "at any stage of the criminal proceeding for any purpose." (Proffer Agreement at 1–2.) Furthermore, as the record demonstrates, and as the Second Circuit has affirmed, Petitioner's decision to attend the proffer session and sign the Proffer Agreement was voluntary. *See Adeknabi*, 675 F.3d at 184 ("[Petitioner], through counsel, requested a safety-valve debriefing[,] . . . voluntarily attended the safety-valve proffer with his attorney and signed the proffer agreement."); (*see also, e.g.*, Proffer Agreement at 1 (noting that Petitioner "has requested an opportunity" to conduct a proffer session with the government); Trial Tr. at 479:14–480:5 (ICE Special Agent DeFilippo, who attended the proffer session, testified that the proffer was a "voluntary meeting requested by [Petitioner] and his defense counsel").)

      Finally, and perhaps most importantly, the Court finds that Russo's decision to allow Petitioner to attend the proffer session fell "within the wide range of reasonable professional assistance" that was appropriate under the circumstances of this case. *Strickland*, 466 U.S. at 689. In assessing the reasonableness of a lawyer's advice regarding whether a defendant should attend a proffer session with the government, a court should consider whether the decision to meet with

the government was strategic. *See Capalbo v. United States*, No. 02-cr-1237 (RJH) (LAP), 2012 WL 1288486, at *10 (S.D.N.Y. Apr. 16, 2012) ("*Capalbo I*"), *report and recommendation adopted*, 2012 WL 3779190 (S.D.N.Y. Aug. 31, 2012) ("*Capalbo II*"). A strategic decision is a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." *Cox v. Donnelly*, 387 F.3d 193, 198 (2d Cir. 2004) (citation and internal quotation marks omitted). As a result, even if a defendant makes statements during a proffer session that lead to additional criminal charges, a counsel's advice regarding a proffer session may be strategic and seen as made to benefit his client if the decision is based on, for example, a plan to "limit[] his client's exposure to further criminal indictment or a maximum sentence at trial." *Capalbo I*, 2012 WL 1288486, at *11; *see also Reich v. United States*, No. 07-cv-2406 (NGG), 2010 WL 10373, at *4 (E.D.N.Y. Jan. 4, 2010) (noting that counsel's advice to attend a proffer session might also be reasonable where the defendant is attempting to negotiate a plea agreement).

Here, assuming Russo advised Petitioner to attend the proffer session, such advice can be considered an objectively reasonable strategy aimed at (i) reducing the mandatory minimum sentence he would have received if he were convicted under Count One of the then-operative indictment (*see* Original Indictment (charging Petitioner with a violation of 21 U.S.C. § 841(b)(1)(A), which carries a mandatory minimum sentence of 10 years' imprisonment)), and (ii) convincing the government that Petitioner was indeed Reginald Davis and eligible for the safety valve. In relation to the first goal, Russo sought to convince the government that Petitioner should be allowed to plead to a lesser included charge which carried no mandatory minimum term of imprisonment. (*See* Russo Decl. ¶ 4 (noting that, in December 2009, Russo engaged in plea discussions with the government to see whether the government "would be willing to offer the Petitioner a plea agreement to a lesser included offense that would carry no mandatory minimum

term of imprisonment"); *see also* Jan. 4 PTC Tr. at 13:12–14 ("Mr. Russo has made it clear that his client really wishes to plead guilty, disputing only one element of the conspiracy count which is the weight.").) Given this objective, the decision to bring Petitioner in for a proffer session was hardly irrational, since Petitioner could still benefit considerably even if he were unable to persuade the government as to his true identity or the propriety of the safety valve. *See Reich*, 2010 WL 10373, at *4 ("[C]ounsel does not render deficient performance by allowing his client to speak to government agents to lay a foundation for potential plea negotiations.").

In relation to the second goal, even though the government told Russo that it did not believe that Petitioner was Reginald Davis, by the time of the December 21, 2009 proffer, the government had provided Russo with *no evidence* to support its position that Petitioner was not Reginald Davis. (*See* Jan. 4 PTC Tr. at 20:1–5 (Russo stating that the government had not yet produced any evidence demonstrating that Petitioner was not Reginald Davis and that "I don't know if they have any")); *see also Strickland*, 466 U.S. at 689 (noting that a court must evaluate counsel's conduct "from counsel's perspective at the time" of the challenged conduct). As a result, at the proffer session, Russo was entitled to assume that Petitioner, who always maintained that he was Reginald Davis (*see* Petitioner Decl. ¶ 3), was Reginald Davis, and that, if Petitioner was truthful during the safety-valve proffer, the government might be persuaded that Petitioner was Reginald Davis and was eligible for a safety-valve. *See Reich*, 2010 WL 10373, at *4 (noting that counsel had the "right to assume his client was telling the truth," when petitioner "does not allege that he told [his counsel that] his story was false or that [counsel] should have independently known that he would make false statements at the proffer session") (alteration, citation, and internal quotation marks omitted)). Furthermore, Russo could have believed that, even if he did not convince the government that Petitioner was eligible for a safety-valve, Petitioner's proffer could have been

15

useful to convince the Court – the ultimate decisionmaker of his safety-valve eligibility. (*See* Jan. 4. PTC Tr. at 6:13–25 ("[M]y understanding . . . is that the government is satisfied that Mr. Davis was truthful at the safety valve, save [for] his identity. The government does not concede that my client is . . . Reginald Davis. That would be the subject of a *Fatico* hearing . . . . [W]e would say that we were truthful, and ask the Court to conduct a hearing wherein the government could demonstrate, by whatever burden they would have, that my client is not who he says he is."); Russo Decl. ¶ 6 ("I further advised Petitioner that even if the [g]overnment opposed safety-valve relief for Petitioner, that the Court could grant such relief despite the [g]overnment's objection.")); *see also United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir. 1997) ("The plain language of [§ 3553(f)] required the district court to make its own determination whether [defendant] satisfied the safety valve provision, in light of the entire record including the government's recommendation.").

In sum, because the Court is persuaded that Russo's advice was strategic, and because Petitioner has failed to demonstrate that Russo's conduct was objectively unreasonable, the Court finds that Petitioner has failed to meet the first prong of the *Strickland* standard. As a result, because failure to meet either prong of the *Strickland* standard warrants dismissal of Petitioner's ineffective assistance of counsel claim, the Court denies the Petition.

### B.  Petitioner Has Failed to Demonstrate Prejudice

Petitioner's ineffective assistance of counsel claim must be denied for the additional reason that he has failed to demonstrate that Russo's conduct prejudiced him. Petitioner claims Russo's conduct prejudiced him because, had he understood the risks of attending a safety-valve proffer session, he (i) would not have attended the meeting and (ii) would not have made incriminating statements about his identity that led to additional charges. (Petitioner Decl. ¶ 6.)

As an initial matter, even assuming that Russo's advice to Petitioner to attend the proffer session fell below objectively reasonable standards, Petitioner has not and cannot demonstrate that his mere attendance at the proffer session prejudiced him.  To the extent that Petitioner is able to demonstrate prejudice, it would be based on the fact that he made *statements* at the proffer session and that those statements were later used against him at trial.  Accordingly, the Court's prejudice inquiry focuses on whether Russo's purportedly objectively unreasonable advice regarding whether Petitioner should participate in the proffer session prejudiced Petitioner.

Here, the Court finds that Petitioner has failed to establish that, but for Russo's deficient advice, he would not have made incriminating statements at the proffer session.  Put simply, the undisputed record reflects that the government advised Petitioner orally and through the written Proffer Agreement about the contours of the Proffer Agreement, including that the government could use Petitioner's statements "at any stage of the criminal proceeding for any purpose." (Proffer Agreement at 1; *see also* Trial Tr. at 703:1–16 (Russo testified that the government advised Petitioner about the Proffer Agreement prior to starting the safety-valve proffer); Russo Decl. ¶ 7 ("At the beginning of the safety-valve proffer on December 21, 2009, the [g]overnment reviewed the terms of the safety-valve proffer with my client and me.  Following this explanation, my client and I executed the agreement.").)  In fact, Petitioner signed the Proffer Agreement, acknowledged that he understood its terms, which he had previously discussed with Russo, and, thereafter, voluntarily participated in the proffer session.  (Proffer Agreement at 2; Trial Tr. at 704:21–705:7); *see also Adekanbi*, 675 F.3d at 184 (noting that Petitioner "signed the proffer agreement, which informed him that any statements he made during the session would be fully admissible against him").  As a result, because Petitioner knew that the government had questioned his identity since the beginning of his criminal prosecution (*see* Jan. 4 PTC Tr. at 13:20

17

("[Petitioner's] identity has been at issue all along")), Petitioner could not have doubted that his continued insistence that his name was Reginald Davis could be used against him at a later stage of his criminal proceedings. *See Adekanbi*, 675 F.3d at 184 ("Having been informed of the government's precondition for recommending safety-valve relief, [Petitioner] nonetheless lied about his identity during the proffer.").

Therefore, in light of the clarity of the government's oral statements and written Proffer Agreement, Petitioner cannot claim that he was unaware of the consequences of making false statements concerning his identity during the proffer session. *See Capalbo I*, 2012 WL 1288486, at *10 (finding that, after signing a proffer agreement which was "unambiguous, and intended to alert [petitioner] to precisely those features of the proffer session about which he now pleads ignorance," petitioner cannot base an ineffective assistance of counsel claim on his counsel's alleged failure to tell petitioner that statements he made during the proffer session could be used against him); *Capalbo II*, 2012 WL 3779190, at *2 ("Petitioner's claims of ineffective assistance as to [his counsel's] role in Petitioner's proffer sessions with the Government fail because Petitioner cannot establish that . . . he was unaware of the terms and consequences of participating in those sessions."). In other words, even without Russo's advice, Petitioner understood the risks of attending the proffer session and nevertheless lied to the government during the proffer session. As a result, the Court finds that Petitioner's ineffective assistance of counsel claim must be dismissed for the additional reason that he has failed to demonstrate prejudice.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT the Petition is denied. The Clerk of the Court is respectfully directed to terminate the motion located at the docket entry dated October 23, 2012 in case number 09-cr-543 (RJS) and to close case number 12-cv-7897 (RJS).

SO ORDERED.

Dated:   October 7, 2015
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE